(701 P.2d 703)

No. 56,635

STATE OF KANSAS, *Appellee,* v. JOHN P. GARDNER, *Appellant.*

Petition for review denied July 2, 1985.

Opinion filed May 2, 1985.

*David H. Snapp,* of Minner & Waite, of Dodge City, for the appellant.

*Daniel L. Love,* county attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before MEYER, P.J., BRISCOE, J., and CORWIN C. SPENCER, J. Retired, Assigned.

BRISCOE, J.: The defendant, John P. Gardner, appeals a jury conviction of aiding and abetting the crime of possession of marijuana with intent to sell. K.S.A. 21-3205 and K.S.A. 1984 Supp. 65-4127b(b)(3).

Highly summarized, the factual background of this case is as follows: At about 1:30 a.m. on January 7, 1983, a DC-7 made an unannounced landing at the Dodge City Municipal Airport. When law enforcement officers later approached the plane, no one responded to their command for any occupant to disembark. Upon boarding the plane, the officers found no one on the plane but they did observe many bales of marijuana. The interior of the plane, including the cockpit and radio instrument panel, was dusted for fingerprints. Maps, directories and manuals were confiscated from the cockpit area.

Two men were noticed at the pay phones of a shopping mall the next morning. When the men were still in the area at 1:00 p.m., the police were contacted. A police officer arrived at the mall soon thereafter and questioned one of the men, who identified himself as Barry Herston. The second man, who was the defendant, walked away while the officer questioned Herston. After the officer assisted Herston in locating a cab, Herston took the cab to the bus station. The defendant, who identified himself as John Gardner, was located a short time later in one of the shops. Both Gardner and Herston told the officer they were just passing through.

At approximately 6:00 p.m., law enforcement officers from Arizona arrived in Dodge City. The Arizona police had information that Gardner piloted the DC-7 into Dodge City. Within the hour, Gardner was arrested, without a warrant, at the bus station. A subsequent search of Gardner's billfold revealed a pilot's license bearing his name.

Fingerprints taken from the seized maps and directories matched the defendant's known prints. The defendant's fingerprints also matched a print taken from the toggle switch located in the cockpit area of the plane. In addition, cigarette butts taken from the defendant's jail cell were the same brand as cigarettes seized from the airplane's dashboard.

On July 7, 1983, a jury convicted the defendant of aiding and abetting the crime of possession of marijuana with intent to sell.

## I. WARRANTLESS ARREST AND SEARCH INCIDENT TO ARREST.

Defendant contends that his warrantless arrest was improper because it was without probable cause (see K.S.A. 1984 Supp. 22-2401[c]), and that the items taken from him incident to the arrest were inadmissible. In challenging his arrest, defendant relies upon *Aguilar v. Texas*, 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509 (1964), and argues the State failed to prove the reliability of the confidential informant and his information.

When analyzing the constitutional validity of an arrest, we must determine whether the facts within the knowledge of the officers at the moment of arrest and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. In establishing probable cause for a warrantless arrest, the principle applies that among peace officers working together and keeping each other informed, the knowledge of each is the knowledge of all. *State v. Parks*, 5 Kan. App. 2d 644, 647-48, 623 P.2d 516 (1981). However, the police officer initiating the chain of communication must either have had firsthand knowledge or received the information from some person—normally the putative victim or an eyewitness—who it seems reasonable to believe is telling the truth. *State v. Clark*, 218 Kan. 726, Syl. ¶ 3, 544 P.2d 1372, *cert. denied* 426 U.S. 939 (1976).

At the outset, we note that the viability of informant information is no longer determined by the two-pronged test of *Aguilar*. In its place, *Illinois v. Gates*, 462 U.S. 213, 76 L.Ed.2d 527, 103 S.Ct. 2317 (1983), adopted a review of the "totality of the circumstances." Accord *State v. Rose*, 8 Kan. App. 2d 659, 665 P.2d 1111, *rev. denied* 234 Kan. 1077 (1983). As applied here, we must determine whether, based on all of the circumstances known to the police at the time of defendant's arrest, there was a fair probability that the defendant had committed a crime.

In this case, a confidential informant told the initiating officer, Agent Miller, that Gardner was flying the plane. Although information provided by a confidential informant may be viewed with a questioning eye (*State v. Lamb*, 209 Kan. 453, 466, 497 P.2d

275 [1972], it still may be given some credence. As in *Illinois v. Gates,* the totality of the circumstances before us includes information provided by an informant which was corroborated by subsequent events. Here, the subsequent events which contributed to the belief that defendant was involved in criminal activity are as follows:

(1) A DC-7 landed, unannounced, in Dodge City, carrying a large quantity of marijuana.
(2) The occupants of the plane had abandoned it.
(3) The defendant was traveling on foot within hours after the plane landed.
(4) The defendant momentarily disappeared when his associate was questioned by a law enforcement officer.
(5) The defendant was from Indiana, allegedly on his way to Wichita to make travel connections out of the state.

When the information from other law enforcement agencies is considered with the events in Dodge City, the totality of the circumstances could have reasonably led the police to believe the defendant had committed a crime. Since there was probable cause to arrest, the pilot and aircraft radio operator's licenses taken from the defendant were properly admitted into evidence as the fruit of a search incident to a lawful arrest. K.S.A. 22-2501.

The defendant's second argument that the documents were inadmissible hearsay is also without merit. Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter is hearsay evidence and inadmissible. K.S.A. 60-460. The documents in question were not offered to prove the truth of their contents; rather, they had an independent value merely by being in the defendant's possession when he was arrested. *Cf. State v. Boyd,* 206 Kan. 597, 599, 481 P.2d 1015 (1971), *cert. denied* 405 U.S. 927 (1972) ("Physical evidence clearly is not hearsay evidence.").

## II. WARRANTLESS SEARCHES OF AIRPLANE AND JAIL CELL.

The defendant next contends the warrantless searches of the airplane and his jail cell were improper. In response, the State argues that the defendant abandoned the airplane and therefore is without standing to challenge its search.

An illegal search can only violate the rights of those who have

a legitimate expectation of privacy in the invaded place. *State v. Whitehead*, 229 Kan. 133, Syl. ¶ 2, 622 P.2d 665 (1981). If an individual has abandoned property, he no longer has a reasonable expectation of privacy in the property which is protectable under the Fourth Amendment. *State v. Chiles*, 226 Kan. 140, Syl. ¶¶ 4, 5, 595 P.2d 1130 (1979).

In this case, the defendant never claimed an interest in the aircraft. The plane was left unattended on the runway of a public airport without evidence of who the owner was or why the plane landed. The warrantless search of the airplane did not violate the Fourth Amendment where the plane appeared to have been abandoned, since the Fourth Amendment does not extend to locations where there is no basis for a reasonable expectation that materials stored therein will be accorded privacy. See *United States v. Ramapuram*, 632 F.2d 1149 (4th Cir. 1980) (warrantless search of an abandoned car). Even if we were to assume the defendant had standing to contest the search of the plane, the exigent circumstances and probable cause which were present here excused the warrant requirement. *United States v. Sigal*, 500 F.2d 1118, 1120 (10th Cir.), *cert. denied* 419 U.S. 954 (1974).

Here, a DC-7 landed, unannounced, in a small city airport. When police officers approached the plane, no one responded to their commands for any occupants to disembark, and bales believed to be marijuana were observed through the windows. Under these facts, a prudent person would be justified in believing that criminal activity was afoot.

Exigent circumstances were also present here. In *Chambers v. Maroney*, 399 U.S. 42, 52, 26 L.Ed.2d 419, 90 S.Ct. 1975 (1970), the court held:

"For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

The court's distinctive treatment of automobiles "has been based in part on their inherent mobility." *United States v. Chadwick*, 433 U.S. 1, 12, 53 L.Ed.2d 538, 97 S.Ct. 2476 (1977).

Here, the inherent mobility of the airplane was sufficient to establish exigent circumstances. *United State v. Gooch*, 603 F.2d

122, 125 (10th Cir. 1979). The presence of exigent circumstances, when coupled with the officers' probable cause to search, compel us to conclude that the search of the plane and the seizure of the items from the plane were proper.

The defendant also questions the validity of the search of his jail cell in his Issue 3, but he does not discuss the question in his brief. An issue which is not briefed is deemed abandoned. *State v. Words,* 226 Kan. 59, 63, 596 P.2d 129 (1979). Even if the issue were reached, there was substantial evidence to support the trial court's conclusion that the cigarette butts taken from the floor of defendant's jail cell were abandoned property in which the defendant had no legitimate expectation of privacy. *State v. Chiles,* 226 Kan. at 144.

## III. HEARSAY TESTIMONY.

The defendant next contends the trial court erred in not striking the testimony of Lieutenant Ken Rogers which referred to communications from federal customs agents not available at trial.

Prior to trial, the judge granted defendant's motion in limine prohibiting the State and its witnesses from referring to any communications received by the federal government or other state law enforcement agencies, because none of the other officers were scheduled to testify at trial. During Rogers' testimony, he made this statement: "At that point we had communication off and on with customs aircraft."

Upon defendant's objection, a hearing was held outside the jury's presence and defense counsel asked the court to instruct the State witnesses to keep their testimony within the boundaries set by the motion in limine. When the judge asked the defense counsel if he wanted a mistrial declared or the jury instructed to disregard Rogers' statement, counsel replied:

"I'd just as soon, you didn't do that.
". . . [W]e're asking that the State·be instructed as to the scope of the Motion In Limine and there won't be any further references of such [non-verbal aspects of the communication, *i.e.* that communications occurred, but not the content of the communications] further down the line."

The court refused to issue an additional order, but noted that any intentional reference to non-verbal aspects of the communication would be inappropriate.

The defendant contends the trial court erred in not striking

Rogers' testimony, alleging that defendant's rights had been prejudiced. Given counsel's own direction to the court regarding the treatment to be accorded Rogers' statement, the defendant's argument must fail because "[a] litigant may not invite error and then complain of that error on appeal." *State v. Reynolds*, 230 Kan. 532, Syl. ¶ 3, 639 P.2d 461 (1982).

### IV. PHOTOGRAPHS.

The defendant contends the trial court erred in admitting photographs of the 377 marijuana bales found on the plane. After the marijuana was photographed on the plane, it was laid on the ground and each bale was numbered with spray paint and again photographed. Samples were taken from each of the 377 bales and sent to the Kansas Bureau of Investigation laboratory for testing. The bales were then loaded on a semi-trailer which was parked next to the Dodge City Law Enforcement Center. All of the bales except two were burned, apparently without a court order.

At trial, the State introduced the two bales which had not been burned, as well as photographs of all 377 bales. Defense counsel objected to the admission of the photographs because they were not the best evidence, and because they were repetitious. The court denied the best evidence argument because it was impractical, and allowed the admission of any photographs which did not contain duplication. The defendant renews his arguments on appeal.

As the best evidence rule, K.S.A. 60-467, applies only to written documents, the defendant's real contention here is that his due process rights were violated when the bales were destroyed without court order and without the defendant having an opportunity to inspect them. Although the better practice would have been to notify the defendant or his attorney and receive a court order prior to the burning of the marijuana (*State v. Antwine & McHenry*, 6 Kan. App. 2d 900, 904, 636 P.2d 208 [1981], *rev. denied* 230 Kan. 819 [1982]), under the facts of this case, the defendant's conviction was not tainted by failing to follow that procedure.

Here, there was no indication that the defendant was prejudiced by not having access to the burned marijuana bales. The samples taken from each bale were available for inspection by the defendant. Further, the burning of the marijuana appears to

have been done in good faith. The 377 bales of marijuana were temporarily stored in a semi-trailer. Considering the lack of a more secure depository, the law enforcement officers were justifiably concerned with the security of this contraband.

Photographs of the bales were admissible if the State laid a proper foundation for their admission, and "if they accurately represent matters relevant to the issues in the case . . . ." *State v. Hollaway,* 214 Kan. 636, 639, 522 P.2d 364 (1974). The admissibility of photographs rests within the sound discretion of the trial court. *State v. Diaz & Altemay,* 232 Kan. 307, Syl. ¶ 7, 654 P.2d 425 (1982).

The defendant does not challenge the foundation or relevance of the photographs, but rather he argues that the pictures of the numbered bales showed some of the bales more than once, thereby misleading the jury as to the quantity of the marijuana.

Although the photographs were not properly included in the record on appeal, a review of the photographs challenged by defendant indicates there was only one duplication. However, the bales were clearly numbered so the jury could easily ascertain the duplication and the exact quantity involved. Under these circumstances, the trial judge did not abuse his discretion in admitting the photographs into evidence.

### V. EVIDENCE OF PRIOR CRIMES.

The defendant next contends the trial court erred in admitting evidence of a prior crime. A former drug enforcement administration agent was allowed to testify regarding his contact with the defendant while the agent was working in an undercover capacity in an aircraft smuggling operation.

Prior to the agent's testimony, the trial court determined the evidence was admissible to prove intent, identity, motive, plan and absence of mistake or accident. K.S.A. 60-455. *State v. Faulkner,* 220 Kan. 153, Syl. ¶ 1, 551 P.2d 1247 (1976). The admission of prior crimes evidence rests with the sound discretion of the trial court. *State v. Bly,* 215 Kan. 168, 175, 523 P.2d 397 (1974).

A review of the record indicates that the trial court did not abuse its discretion in admitting the prior crimes evidence. The defendant's argument that there was an insufficient showing of similarity between the incidents to use the testimony to establish identity is not compelling. Both incidents involved the trans-

portation of large quantities of marijuana in a late model airplane. The evidence was also relevant to establish defendant's intent in that this prior evidence would indicate that the defendant knew what he was doing in the present instance. See *State v. Faulkner,* 220 Kan. 153.

The trial court did not abuse its discretion in determining that the probative value of the prior crime outweighed the tendency to prejudice the defendant. Any prior crime has the potential for strengthening the State's case; however, that may be the only method of proof for some elements of the crime.

## VI. JURISDICTION/SUFFICIENCY OF THE EVIDENCE.

The defendant contends that the trial court was without jurisdiction to try the offense charged or, in the alternative, that there was insufficient evidence to support his conviction.

The defendant bases his jurisdictional argument on *State v. Palermo,* 224 Kan. 275, 579 P.2d 718 (1978). In *Palermo,* the defendant neither intended to sell drugs in Kansas, nor knew the drugs were purchased from him in Missouri for resale in Kansas. The court concluded Kansas courts were without jurisdiction to try the defendant absent a showing that the criminal act was committed, intended to be committed, or foreseeably could have been committed within the state seeking to prosecute the defendant. 224 Kan. at 277.

*Palermo* is inapplicable to this case because there is evidence that defendant committed a criminal act within Kansas; at the very least, possession of marijuana. The defendant's fingerprints were found on items taken from a plane which had landed in Kansas and contained a large quantity of marijuana. See also K.S.A. 21-3104(2), 22-2607, 22-2608. The court had jurisdiction over the defendant.

Defendant also contends there was insufficient evidence to convict him of aiding and abetting. In considering the sufficiency of the evidence to sustain a conviction, this court looks only to the evidence in favor of the verdict, it does not weigh the evidence. If the essential elements of the charge are sustained by any competent evidence, the conviction stands. *State v. Fosnight,* 235 Kan. 52, 53, 679 P.2d 174 (1984). Direct evidence, as distinguished from circumstantial evidence, is not essential to a criminal conviction. *State v. Ward,* 233 Kan. 144, Syl. ¶ 1, 660 P.2d 957 (1983).

The defendant relies upon *State v. Doyen*, 224 Kan. 482, 490, 580 P.2d 1351 (1978), to contend the lack of competent evidence establishing a *principal* committed the crime of possession of marijuana with intent to sell nullifies his aiding and abetting conviction under K.S.A. 21-3205(1). The thrust of the *Doyen* decision was that Doyen could not be charged with the non-crime of *causing* false campaign reports to be filed.

To show guilt of one who aids and abets, the law requires that the person knowingly associate with the unlawful venture and participate in a way which indicates that such person is furthering the success of the venture. *State v. Hobson*, 234 Kan. 133, 138, 671 P.2d 1365 (1983). See *State v. Burton*, 235 Kan. 472, 477, 681 P.2d 646 (1984); *State v. Williams*, 229 Kan. 646, 661, 630 P.2d 694 (1981); *State v. Payton*, 229 Kan. 106, 111, 622 P.2d 651 (1981); *State v. McDaniel & Owens*, 228 Kan. 172, 178, 612 P.2d 1231 (1980); *State v. Wilson & Wentworth*, 221 Kan. 359, 367, 559 P.2d 374 (1977); *State v. Edwards*, 209 Kan. 681, 686, 498 P.2d 48 (1972).

Here, the record contains competent evidence that the defendant had associated himself with a criminal venture and that he intended by his actions to make the venture succeed. Proving beyond a reasonable doubt that a specific person is the principal is not an element of the crime of aiding and abetting. It is not even essential that the identity of the principal be established. *United States v. Harper*, 579 F.2d 1235, 1237-39 (10th Cir.), *cert. denied* 439 U.S. 968 (1978). Acquittal of an identified principal does not necessarily foreclose prosecution of an alleged aider and abettor. *United States v. Coppola*, 526 F.2d 764, 776 (10th Cir. 1975). The jury could conclude in the case at bar that another person or persons, though unidentified, instigated this mass transport of marijuana with intent to sell it and that the defendant assisted in the criminal act.

Affirmed.